Our final case today is number 2010-1382 Kimberly-Clark v. FIRST QUALITY, Mr. George. May it please the court, there have been two developments since briefing was completed. We brought them to the court's attention pursuant to Rule 28J. With respect to the 187 patent, the patent office issued a first office action and re-examination rejecting all of the asserted claims on multiple grounds. In addition, the district court issued a... What's the status of that now? Is that on the field or the board? It was a first office action. Kimberly-Clark has not yet responded. Oh, it's still before the exam? Correct. And that's just the 187? Correct. Right. In addition, the district court entered a claim construction order, which we also brought to your attention, and actually reversed himself on a key limitation. And that has to do with the 143 inspection patent. And there, the court rejected our invalidity position based on a claim construction of pre-fastened. And he has since reversed himself. So the only reason that he had for all of the claims but one, for rejecting our invalidity defense, is now gone. So when he changed his construction, so pre-fastened, he had previously said it covers only the refastenable training pants. Exactly. He says it covers... And it didn't meet the pre-fastened claim limitation. So he has reversed himself. And therefore, the one reason that he gave... The only reason that he gave for all of the claims except one of the 143 patent is gone. Now, that leaves only Claim 68, which is a dependent claim. And that claim... The main claim says you want to tension the side panels of the diaper. And Claim 68 says tension it by pulling it apart. Now, to me, that seems extremely obvious as how else would you do it. And, in fact, there's testimony from both experts on this. So I don't really think that can rise to the level of supporting a preliminary injunction on the 143 patent. I think we have now established a substantial question of patentability as to all of the asserted claims. Okay, so in the light of those two developments, your suggestion is that you ought to focus on the other patents. Yes, and I'm going to go there right now. Just to finish up on the 143 patent, on non-infringement, there's also a claim construction issue where the court construed inspecting an engagement scene to mean capturing an image. And that, again, just that can't be a right claim construction because you have some claims that say capturing an image. You have other claims that say inspecting an image. And then you have some claims that say both. Claim 73 says both. What's the status of the proceedings below beyond just the... We're going through discovery right now. So I'd like to now move to the 939 patent, which is the sheer stress patent. And the key issue on invalidity was one reference, the Lindquist reference. And does it teach a sheer stress? And does it teach promoting increased engagement? And here we believe the judge just really just misread the reference. The reference clearly teaches an open and reclosable pant diaper. Did you have any expert testimony on the Lindquist? We did. Both sides had expert testimony. Yes. And the court, however, credited the other side's expert. He did. He did. And, Your Honor, I think this is a case like Amazon and like Abbott where the court just misread the reference and the expert for the other side misread the reference. Well, tell me if I'm misreading the reference. Sure. Because it seems to me that the claimed device achieves its shearing by pulling in opposite directions. And it seems to me that the Lindquist reference achieves somewhat the same purpose or tries to with this rollers that are going in the same direction. Well, there's been a new development on that, Your Honor. In the claim construction that the court just decided, he actually construed sheer stress to just mean a force generally parallel to the face of the material. He doesn't say anymore that it has to be in opposite directions. It just has to be generally parallel. And that makes sense, Your Honor, because in the patent, and I can give you the page in the decision if you need that. The patent gives several different ways of doing a sheer stress. You can pull it in opposite directions. You can hold one and pull the other. You can hold the other and pull one. So there were multiple ways of doing it. Going in the same direction as Lindquist does? Do you dispute that Lindquist goes in the same direction? Lindquist generates a sheer stress the same way if you take a bunch of pieces of paper and you push it like this, each piece of paper is moving relative to the other, parallel to the face of the material. And so you're getting the sheer stress. The court's definition is now a force generally parallel to the face of the material. And the Lindquist specifically says, relative displacement in a direction substantially parallel to the surface of the article. The teaching is exactly the same. At best, the Lindquist may give compression as well as sheer, but it certainly gives sheer under the definition that the court has now adopted in the new claim construction. The other problem is that the prosecution here is very relevant. The claims of 939 patent were not allowed because the sheer stress was new. In fact, there was a prior reference, Maschusta, that applied the sheer stress manually. And the court said, well, the patent office said, well, they didn't do it mechanically, so we'll give you a patent. Lindquist clearly does it mechanically with these rollers. The other thing that Lindquist teaches is, it says to do this to achieve a significantly increased retention force. That's a quote right out of Lindquist. And the court missed that. The court said, oh, I don't think it's a sheer stress, and it doesn't say anything about increasing retention force. Now, while he focused on this alleged failure of Lindquist to teach a retention force on validity, and said we didn't show validity, even though the reference says that, on infringement, he never made a finding that we had the increased sheer stress, the increased engagement. He made no findings that what first quality did promoted increased engagement between the fastening components. And in fact, in paragraph 19 of the court's order, the court even says that first quality contests this very same issue, and we had expert testimony on it at A4950 to A4953, and then the court never made a finding on it. So there's no support in the court's order for a finding that there's a substantial, certainly a substantial question on invalidity. There's a substantial question on non-infringement, because there's no finding that a critical element of the claim is found in first quality's process. Interestingly, again, the court said, oh, the reference doesn't teach promoting engagement strength, but it did. It said exactly that. And then when it came to first quality, the court said, first quality says they don't promote engagement strength, and they don't do a sheer stress, and then the court just said, well, there's a sheer stress and doesn't say anything about promoting engagement stress. I'd like to move to the 316 tucking patent. And here again, I think it's just the evidence that was put forward just doesn't support the infringement finding by the judge, again, on a preliminary injunction hearing on an expedited basis with very little discovery in time. But there's a key limitation in the tucking patent, the 316 tucking patent, and that is that the vacuum width has to be equal to the folded width. So the width of the vacuum has to be equal to the folded width. The best, this is Kimberly Clark's evidence. It's red briefed at page 58. And they show that, they say these are the longitudinal fold lines, and so there's a vacuum up here that's holding up the training pan. And they say, okay, this must be the tucking station, and this must be where the longitudinal folds are. So these longitudinal folds, the vacuum are being formed by this vacuum, and they're equal, the vacuum is equal to the longitudinal fold. There's only one problem. This is a longitudinal fold, and this is from the blue brief at page 81. It's nowhere near as wide as the vacuum. What you're looking at, and you can see, this is the, this whole portion here and this whole portion here is not equal, it's tucked in, it is not the width. So this was the evidence, and in our first brief we pointed this out. Kimberly Clark said, oh, well, the judge looked at a lot of things. He looked at a video, he looked at this, he looked at that. But then KC cited the same picture. All of the evidence, this is the best, this is the picture. This is the best that they could come up with to show this. And it doesn't show it. And so it reads on prior art. No, here we're saying is we don't infringe. Oh. In other words, yeah. Can we turn to the validity questions? Yes. Okay, on the validity question, the difference between you and the prior art is the length of this, whatever you call it, the vacuum zone? On validity, we showed. Any tension, obviousness here? On the validity, we showed, we had prior art where the vacuum zone was equal to the fold. The folded width. So in the prior art, we showed, it's the driver's machine. We showed the driver's machine that had a vacuum width that was equal to the folded width. So that what you would see in the driver's machine is that before it was tucked, it would look like this. The vacuum on top would, in essence, define the fold lines. And then it would be tucked in. And your fold width would be equal to the vacuum width. That is the reference that we put forward. The judge rejected it because he said, well, it's not permanent. Again, it's this difference between permanent side seals and refascinable side seals, which, again, we don't believe is an appropriate distinction to make. Interestingly, in the re-exam on the 187 patent, the examiner cited a bunch of references and said it would be obvious to interchange refascinable side seams with non-refascinable side seams. And many of these patents actually talk about that the invention applies to both. So on validity, that's the issue. On infringement, there's no evidence because this is the best picture they have, and this width is just not equal to this width. It just isn't. Now I'd like to talk about the... I'm in my rebuttal time, so I think I'll stop. Thank you. Thank you. Mr. Trellin. Thank you, Your Honor. May it please the court. As the court knows, the district court conducted an extensive evidentiary hearing here, heard from multiple witnesses, had voluminous written submissions, made express credibility determinations, and made detailed findings of fact, that first quality infringes and that the asserted claims of these patents are not invalid. Now, Mr. George mentioned two recent developments, and let me start by talking about those. The first is... In particular, with respect to the 187 patent, why doesn't the first office action raise a substantial question of patentability with respect to that patent? Well, it doesn't, Your Honor, it doesn't in the preliminary injunction sense. That is, it doesn't show that their invalidity defenses have substantial merit, because, first of all, it's a first office action. Kimberly Clark has not even responded. What the patent office did was take at face value declarations from, for example, experts, first quality experts, that the district court saw and heard and rejected their testimony. So for that reason, we think the first office action really is of no moment here, precisely because it's preliminary, the standards are different, and, in fact, first quality sought a stay of the lower court proceedings based on the re-exam, and the district court rejected that for precisely those reasons. Well, what supports the notion that the first office action is just a rubber stamp? Oh, well, I'm not saying it's a rubber stamp, Your Honor, but the patent office is considering one side of the case. So they're saying one side of the case renders it invalid. Why doesn't that raise a substantial question? I mean, you can have a substantial question as a result of conflicting factual evidence, conflicting legal theories, right? Sure. So it seems to be as though they've examined one side's evidence and says it renders it invalid. Why doesn't that render it a substantial question? Well, it doesn't, Your Honor, because in this case, again, you're dealing with a hearing where the district court made credibility determinations based on some of the same, precisely the same evidentiary submissions that the patent office took at face value. Now, the patent office, up to this point, had no basis not to take them at face value because it hasn't seen the other side. But I don't think it's been a final office action. With full consideration of Kimberly-Clark submissions and all of that? I mean, I'm not. Then I think it's a closer question. Then I think maybe. But I think at this stage of the reexamination proceedings, I don't think you can reach that conclusion, not after you've had an evidentiary hearing with credibility determinations and a lot of things the patent office has not yet seen. Now, the other recent development that Mr. George mentioned was the claim construction order that the district court entered recently. Now, as to the 143 patent, that's where the court changed the construction of pre-fastened disposable pants. And there are a couple of things I'd like to say about that. First of all, with all due respect, we think the court got it right the first time. As we lay out in the brief. That's not going to create, to eliminate a substantial question that the district court has changed its mind. Well, Your Honor, the district court's second order is not here. The question here is whether the district court's initial construction is. We can take judicial notice of the second order. Well, sure, you can take judicial notice of it. But it's no more than, I mean, it's de novo review anyway. The question is, there's a claim construction issue here. And the claim construction issue is, in this patent, what does pre-fastened disposable pants mean? And as we lay out in the brief, the specification consistently refers to the training pants of this invention as having refastenable seams. When it's talking about permanent seals, it uses terms like bonding and bonded. When it's talking about these refastenable seams, that's when it uses the words fasteners and fastening components. In fact, it refers to fastening components as components that are adaptable for refastenable engagement. Then it goes into a three-column description of these kinds of refastenable systems. So, as I said, we think the district court got it right the first time. But even beyond that, that was not the only basis for the rejection of the invalidity contentions. The district court noted, first of all, that the prior art on which First Quality relies, the drypers and the TP3 machines, there's no corroboration that those are, in fact, prior art. Yeah, but you've got a problem trying to transverse that. I mean, the district court said that, but then he went on to say, but they presented some argument, and at this stage, since discovery isn't complete, I'm going to go with that. Oh, well, go ahead. I'm sorry. So you want us to disagree with the district court in terms of whether or not we consider this prior art? Is that where you need us to go? No, we don't need you to go there. But I think you can go there because what the district court said is exactly that. They presented some argument. They presented no evidence. And at this stage of the proceedings, we're not saying that they had to have the clear and convincing corroborating evidence, but at this stage of the proceeding, a complete lack of corroborating evidence would be an independent basis to affirm the district court's determination. Well, let's assume that we agree with the district court's latest claim construction and we agree with the district court that we should consider the TPC prior art. Where does that leave you? First Quality still has two other problems. There is a substantial question whether the TP3 machine even had an inspection system at all, as the district court noted at paragraph 37 of its decision. And the evidence on that, their evidence that it had... He didn't resolve that, right? He did not resolve that because he didn't need to because of the claim construction. I mean, on the one hand, you're arguing we should defer to the district court. On the other hand, you're saying that insofar as he left something open, we should go ahead and resolve it. It doesn't seem entirely consistent. Well, the state of play is this, Your Honor. Kimberly-Clark presented evidence that the TP3 machine did not have an inspection system. First Quality's evidence that it did consisted entirely of the uncorroborated testimony of Mr. Calvert. I think you've got a hard row to hoe if you're trying to convince us to sustain an injunction on a different ground than the district court ran. Well, let me try a different row then, Your Honor, perhaps one that's not as hard. And that's Claim 68 of the 143 patent. As Mr. George noted, that has a different limitation or an additional limitation, and that is the requirement that the side panels be pulled in opposite directions to tension of the seam. The court found as a fact that Paragraph 18 of its findings that First Quality had failed to show that the TP3 machine had that feature. That finding rested squarely on the expert testimony, in particular the testimony of Mr. Butterworth. He explained exactly why it didn't, and that's at 6336 and 6375-79 of the joint appendix. And so certainly as to Claim 68, the revised claim construction has nothing to do with the reason that the validity of that claim was upheld. Just to be clear, there are a lot of patents obviously flowing around. Paragraph 18 dealt with the 316 patent, right? I was just talking about the 143 patent. If I said Paragraph 18, I meant Paragraph 38. I misspoke if that's what I said, Your Honor. I apologize. Maybe I misheard. You better spend some time on 939 and 316. I would be happy to. Let me talk about the 316 first. As to the infringement question on that, first of all, the evidence before the district court went far beyond that single photograph. The court expressly relied on Mr. Sheldon's testimony concerning his observation of First Quality's process, as well as on photos and videos of the process. Importantly, the court also noted that First Quality's contrary evidence consisted of design drawings, and solely of design drawings, which First Quality's own expert admitted differ from the actual machine's. And they were also inconsistent with photos of the actual machine. And the court found it both inexplicable and significant that First Quality had failed to present photos and videos of its own machine. And the infringement testimony on that, Your Honors, is 319-22, 6063-67, 6238-47, and 6286-87 of the joint appendix. There was extensive expert testimony on exactly what those pictures and drawings mean, and the district court resolved those against First Quality. Now, as to validity, the district court found as a fact there that the DRIPERS and P&G machines, which made permanently bonded pans, didn't disclose or make obvious the method of the 316 patent. That's at paragraph 40 of the findings. That finding was squarely based on the evidence concerning those machines, including Mr. Butterworth's testimony, which the court described as convincing on this point. Now, Mr. Butterworth explained why the machines would not have worked with refastenable seams, and this notion that Mr. George was saying, well, of course, it's obvious to substitute refastenable seams for permanent ones, but that's a fact question. The district court resolved that question against First Quality. Moreover, as Mr. Butterworth explained, there's another limitation in these 316 claims, and that is a requirement that the fastening components be pushed into the body of the garment in a flat confirmation. He testified in 5808 to 5810 that the cited prior art, even assuming it was prior art, did not reveal that limitation. So even if you accept everything else, those claims are not invalid because there's no indication that they teach that limitation. Now, the 939 patent, Your Honor, as to Lindquist, which is the- Before you get to that- Yes. Talk about the infringement, because I looked at the evidence on infringement. You seem to have directly contrary interpretations by two experts as to what this photograph shows. Yes. And why doesn't that raise a substantial question as to infringement? Well, because the district court resolved that conflict by accepting the testimony of Kimberly Clark's expert, Your Honor. Did he say that he didn't believe the First Quality expert? The district court, he did not say he did in so many words that he didn't believe the First Quality expert on that point, but if you look at his findings, which are, I think, paragraphs 14 to 18, he consistently cites the Kimberly Clark expert's testimony and Kimberly Clark's evidence on those points. So that is, I think, you know, he's making the determination there of which expert's testimony he's accepting on the infringement questions. Yeah, but it's hard to see him as having made a credibility determination about the First Quality expert, isn't it? Well, Your Honor, when there's conflicting expert testimony presented and the district court says, I'm basing my finding on the testimony, in this case, of Mr. Sheldon, who said A, B, and C, I think that that's exactly what that is. He's not calling the other expert a liar. He's certainly not doing that, but he's saying this testimony is more credible. This is a testimony I'm accepting. I don't think the district court has to say, with respect to each item, Gardner said this, Sheldon said this. You know, I think Gardner's, you know, full of hot air and I think Sheldon's right. I think that's, you know, that's the inference you draw from the evidence he decides to credit, and that's what you see there. Now, the 939 patent, with respect to the Lindquist reference, that's the single validity reference on which First Quality relies, the district court found based on Butterworth's testimony, and Butterworth explained this in detail at 5813 to 23 of the joint appendix, what you're seeing there is not a shear stress, it's a compression force. You have these two wheels that just press the material straight downward, and the relative displacement that Lindquist refers to is not one material moving parallel to another. It is basically the position of the hooks changing relative to where they were before the compression force was applied, and Butterworth lays all that out in his declaration. Now, the claim construction change that the district court made, that is that it's a parallel movement or parallel force. It's not, you don't have to pull. That is a change, but it doesn't have anything to do with the 939 findings. If you look at the findings, the district court didn't rely on that aspect of its prior construction at all in any of those findings. So as to that, as to the 939 patent, the claim construction order really has no bearing. The, oh, on infringement on the 939 patent, the First Quality presented evidence that, I'm sorry, I've got it reversed. Kimberly Clark presented evidence that First Quality practiced all of the limitations of that patent. It's at 327 to 28 of the joint appendix. In response, First Quality argued only that it didn't mechanically handle the garb and generate a shear stress. Now, Mr. George says that they challenged the increased engagement force requirement of the limitation of the claims, but they did not. If you look at their expert's testimony, for example, at 6622 to 23, he's talking, his whole argument and their argument in their briefs was just there's no shear stress. The district court found to the contrary at paragraph 20, that finding was based squarely on the testimony of Kimberly Clark's expert Sheldon, and he testified about what he saw when he personally inspected the process. The court also had photographs and videos of the process. Sheldon's live testimony and declaration were based on more than 380 pictures and multiple high-speed videos of the process. And the court expressly determined that there's a picture in First Quality's brief that they say that the court misinterpreted, but the court addressed that and said it shows that there is, in fact, shear stress at the key point, which is when the tucking blades are touching the side panels, and that's exactly what Sheldon explained to the court. So there's convincing evidence on infringement on that patent as well. I see my time's up. I'm happy to answer any other questions. I have one question to see if I understand this. What you're saying basically is that even though if this were on the merits, perhaps the evidence might not be enough to sustain the findings. Since this is just on a preliminary injunction and those findings can be changed on the merits, it's enough to sustain the preliminary injunction, i.e. to show that you were likely to prevail on the merits and they were unlikely to prevail in their challenges to the patent. No, no, we're not saying that, Your Honor. I'm not saying that. No, what we're saying here is that even if this was a decision on the merits, the district court's findings are more than sufficient because they're based on his assessment of the credibility of the witnesses. And to the contrary, if this were a judgment on the merits, their principle prior art wouldn't be considered at all because they had no corroborating evidence. So to the extent that there was a lower standard, first quality got the benefit of it. I'm not saying that we're claiming the benefit of it. No, you're not saying that because there's a less demanding standard for a preliminary injunction than for a determination on the merits, whatever you might think about this in the light of permanent determination, for an injunction, you're not claiming that that's sufficient. I'm sorry, could you repeat that question, Your Honor? What I'm trying to find out is to what extent does your argument rest on the fact that the standards governing a preliminary injunction may not be the same as the standards grant governing a permanent decision. I don't think our argument relies on some difference in the standards, Your Honor. The difference in the standards, I think, goes to this corroboration requirement where the court was saying, well, maybe first quality will be able to corroborate in the future, so I'm going to consider this art now. Don't you find it a little troubling that what you have here is a mini-trial on numerous issues of infringement, invalidity, and credibility findings, and it sounds very much like a trial on the merits, rather than what you think of in the typical preliminary injunction situation is that it's pretty clear that the patent is being violated. It sounds as though district court has resolved all sorts of issues, which you normally would think would be addressed at the merits stage of the case rather than on a preliminary injunction. Well, Your Honor, obviously they will be addressed at the merits stage of the case, and I'm not sure this is atypical for a preliminary injunction. These are always typically contested hearings. Both sides put on evidence, and the district court makes decisions. Some of them are credibility decisions. There's no need to make a credibility determination. So, no, I don't think it's troubling. This was a two-day hearing, extensive submissions. Everybody got their day in court, and the district court decided the issues presented to it. Thank you. Very briefly. Could I just ask one practical question? Is this an all-or-nothing thing for your client? No, each patent is independently important for us. So even if there's an outstanding preliminary injunction? On one of these patents, and as to others, no, each one is important. Just very briefly, the patent examiner wasn't just at face value. In fact, he didn't accept some of our rejections. He came up with his own rejections. He used different references than the court did. So it was certainly not a rubber stamp. I heard that there was no corroboration. We had witnesses, and we had documents, and we had declarations from third parties. And I asked the judge at the end, I said, I can bring more people here, and we can do more. And that's why the judge said what he said. That's why he let this. He says, okay, I'm going to accept this prior art. And as I said, this was an expedited hearing, very little discovery. We got the papers, their last papers, we got them two days before the hearing. And there were new theories in there. This was for four patents. And there are a lot of issues, both on validity and infringement. We raised substantial questions, and it should be reversed. Thank you. Thank you both, counsel. That concludes our session.